UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE HARPER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE LAW OFFICE OF HARRIS AND ZIDE LLP,<br><br>    Defendant. | Case No. 15-cv-01114-HSG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 56 |

Before the Court is the motion for preliminary approval of class action settlement filed by Plaintiffs Joyce Harper and Leila Emerson ("Plaintiffs"). Dkt. No. 56 ("Mot."). Plaintiffs filed suit against Defendant The Law Office of Harris and Zide LLP ("Defendant") for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* ("RFDCPA"), for failing as a matter of pattern and practice to provide certain required disclosures during debt collection. The parties have reached a settlement regarding Plaintiffs' claims and now seek required court approval.

The Court has carefully considered the arguments of the parties, both in Plaintiffs' written submission and at oral argument. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to implement the proposed class notice plan.

I.     **BACKGROUND**

    A.     **Factual Allegations and Procedural History**

Plaintiffs filed suit against Defendant and Bank of America, N.A. ("BOA"), now dismissed from the action, for violation of the FDCPA and RFDCPA. Dkt. No. 29 ("Compl."). Plaintiffs allege that Defendant, acting to collect debts from the putative class on behalf of BOA, failed to

provide the exact disclosure required by 15 U.S.C. § 1692g(a)(4). *Id.* ¶¶ 1-2. Section 1692g(a)(4) requires that debt collectors send certain "validation notices" to debtors when attempting to collect a debt that advise debtors about their rights to dispute the debt and to request, "in writing," that the debt collector provide verification of the debt. 15 U.S.C. § 1692g(a)(4). Unless this information is included in the initial communication with a debtor, a debt collector must provide notice within five days. *Id.* § 1692g(a). Plaintiffs allege that Defendant failed to inform them that verification of their purported debt could be requested in writing only, thereby insinuating that an oral request for verification of the debt is valid. Compl. ¶¶ 22-32. On that basis, Plaintiffs sought statutory damages, injunctive and declaratory relief, prejudgment interest, and attorneys' fees. *Id.* ¶ 70.

Defendant answered the complaint on June 17, 2015. Dkt. No. 36. Plaintiffs stipulated to dismiss BOA from the action and filed a notice of class action settlement on September 17, 2015. *See* Dkt. No. 52. Plaintiffs filed their unopposed motion for preliminary approval of class action settlement on November 2, 2015. The Court held a hearing on December 17, 2015. Dkt. No. 60.

### B. Overview of the Proposed Settlement

The parties executed a class action settlement agreement that details the provisions of the proposed settlement. Dkt. No. 56-1 ("SA"). The key terms are as follows.

<u>Class Definition</u>: All persons with a California address to whom Defendant mailed an initial debt collection communication that stated, "If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you," between March 10, 2014 and March 10, 2015, in connection with the collection of a consumer debt on behalf of Bank of America, N.A. *Id.* ¶ 1.B. The parties have represented that there are a total of 1,157 persons who fall within this class definition. *Id.* ¶ 10.A.

<u>Monetary Relief</u>: Each class member will receive $10 regardless of the ultimate size of the class. *Id.* Given the currently estimated class size, the class will receive an aggregate payment of $11,570. *Id.* Plaintiffs will receive an additional $1000 each as statutory damages awarded under 15 U.S.C. § 1692k(a)(2)(A). *Id.* ¶ 10.E; Mot. at 14. To the extent that any funds remain after all claims are paid, Bay Area Legal Aid will receive the balance as a *cy pres* recipient. *Id.* ¶ 10.D.

1    <u>Injunctive Relief</u>:  Defendant will no longer use the language quoted in the class definition in its initial debt collection communications.  *Id.* ¶ 10.F.

<u>Release</u>: The class will release Defendant and any associated persons or entities from any and all known and unknown claims that arise out of or relate to the use of the language quoted in the class definition from Defendant's initial debt collection communications.  *Id.* ¶ 1.C.

<u>Class Notice</u>: A third-party settlement administrator will send class notice via US mail to each putative class member at their last known address, as provided by Defendant and updated by the administrator as appropriate.  *Id.* ¶ 6.C.  Any letters returned as undeliverable will be sent to any updated address provided with the returned mail.  *Id.*  The parties attach to their settlement agreement a copy of their proposed class notice.  *Id.*, Ex. C.

<u>Opt-Out Procedure</u>:  The parties propose that any putative class member who does not wish to participate in the settlement must draft and send a written request for exclusion to the settlement administrator within 60 days of preliminary approval.  *Id.* ¶ 8.A.

<u>Class Representatives and Class Counsel</u>: Plaintiffs seek, and Defendant agrees not to oppose, appointment as class representatives and appointment of their attorney as class counsel.

<u>Attorneys' Fees and Costs</u>: Plaintiffs will file an application after final settlement approval for attorneys' fees and costs not to exceed $45,000.  *Id.* ¶ G.1.  Defendant will not oppose an application for fees and costs totaling no more than $25,000.  *Id.*  Settlement is not contingent on the outcome of this fee application, which remains subject to the discretion of the Court.  *Id.* ¶ G.2.

## II.     PROVISIONAL CLASS CERTIFICATION

The Court first considers whether provisional class certification is appropriate because it is a prerequisite to preliminary approval of a class action settlement.

### A.     Legal Standard

Federal Rule of Civil Procedure 23 governs class actions, including the issue of class certification.  In that respect, "Rule 23 does not set forth a mere pleading standard."  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A plaintiff bears the burden of showing that she has met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir.

2001); *see also Dukes*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate [her] compliance with the Rule[.]"). If a district court concludes that the moving party has met its burden of proof under Rule 23, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all of the prerequisites of Rule 23(a) are satisfied, a court must also find that the plaintiff "satisf[ies] through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, — U.S. —–, 133 S. Ct. 1426, 1432 (2013). Where the plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(2), the plaintiff must show only that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, — U.S. —–, 133 S. Ct. 1184, 1194, 185 L. Ed. 2d 308 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23.") (internal marks omitted). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 133 S. Ct. at 1432. District courts considering certifying a class under Rule 23(b)(3) must take a particularly "close look at whether common questions predominate over

individual ones." *Id.* (internal marks omitted). With respect to Rule 23(b)(2), district courts generally consider whether the plaintiff asserts a cohesive "pattern or practice" claim. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). But, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

**B.     Analysis**

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) have been met, then whether Rule 23(b)(3) allows certification of a damages class, and finally whether Rule 23(b)(2) allows certification of an injunctive relief class.

        1.     <u>Rule 23(a) Certification Prerequisites</u>

                a)     *Numerosity*

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." "As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008). Because the putative class includes an estimated 1,157 members, the Court finds that joinder of them all would be impracticable in this action and, therefore, numerosity is satisfied.

                b)     *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Indeed, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted; italics original). That said, even a single common question is sufficient. *Id.* at 359.

Common questions in this action include whether Defendant sent the form letter at issue to the putative class and whether that letter violated disclosure rules for initial debt communications set forth in the FDCPA, 15 U.S.C. § 1692g(a)(4), and the RFDCPA, Cal. Civ. Code § 1788.17. In

class actions brought under those provisions, these questions are sufficiently common to satisfy the commonality requirement. *See Schuchardt v. Law Office of Rory W. Clark*, No. 15-cv-01329, 2016 WL 232435, at *5 (N.D. Cal. Jan. 20, 2016) (internal marks omitted) ("[C]ommonality is generally found in FDCPA cases where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them illegal form letters." ). Accordingly, the Court finds that the commonality requirement is met in this case.

          c)    *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), "representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (internal quotation omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (citation omitted).

Both Plaintiffs in this case have claims factually and legally identical to that of the putative class because they were allegedly sent the same letter, suffered the same nominal harm, and seek statutory damages and injunctive relief. That is sufficient to satisfy the typicality requirement. *See Schuchardt*, 2016 WL 232435, at *5 (typicality met where named FDCPA plaintiffs receive same allegedly unlawful form letter, suffer the same harm, and seek the same recovery).

          d)    *Adequacy of Representation*

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. With regard to the first question, class representatives fail to meet the adequacy standard when the "conflicts between the class members are serious and irreconcilable." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)). The second question determines whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

The Court is unaware of any actual conflicts of interest in this matter. While a potential conflict of interest could theoretically arise between Plaintiffs and the putative class given the very substantial difference in their awards under the settlement agreement, the Court finds no adequacy problem for the reasons discussed below in evaluating the fairness of the settlement. Plaintiffs' attorney has been appointed class counsel in numerous class actions around the country, including those brought under the FDCPA. Dkt. No. 56-1 ¶ 4. Accordingly, the adequacy of representation requirement is satisfied with respect to Plaintiffs and their counsel.

In sum, the Court finds that Plaintiffs have met the four prerequisites of Rule 23(a).

### 2. Rule 23(b)(3) Certification

To certify a damages class, Plaintiffs must also satisfy the requirements of Rule 23(b)(3), which are predominance and superiority. Fed. R. Civ. P. 23(b)(3).

#### a) Predominance

Rule 23(b)(3) requires that common questions predominate over individual questions. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, — U.S. —, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotation marks and citation omitted). "Considering whether questions of law or fact common to class members predominate

begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179, 2184 (2011). Courts analyze each claim element to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 600 (N.D. Cal. 2010).

Section 1692g(a) of the FDCPA is a strict liability statute that requires debt collectors to disclose certain information in an initial debt communication. *Tourgeman*, 755 F.3d at 1118-19. Section 1788.17 of the RFDCPA provides parallel liability under state law. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1064 (9th Cir. 2011). As noted above, the common questions driving this litigation are whether the putative class received the form letter at issue and whether it violated 15 U.S.C. § 1692g(a)(4) and California Civil Code § 1788.17 for failing to disclose that debt validation requests needed to be in writing. The only individual issue that these claims could seemingly raise is the amount of actual damages owed to each putative class member, if sought. But the putative class seeks only statutory damages. Accordingly, the Court does not find that there are any individual questions in this action and, therefore, common questions predominate.

### b) <u>Superiority</u>

Rule 23(b)(3) also tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is a superior method of adjudicating plaintiffs' claims, the Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*; *Zinser*, 253 F.3d at 1190–92.

The Court finds that superiority is met in this case. From a case management perspective, concentrating over 1,000 individual actions into a single class action is the most economical tack because each "separate action would involve the same evidence—the debt collection letter—and the same legal theory." *Schuchardt*, 2016 WL 232435, at *7. The only factor that could weigh in theory against using the class action mechanism in this case flows from the structure of the

statutory damages regime under the FDCPA and RFDCPA. Under 15 U.S.C. § 1692k(a), FDCPA actions can yield a significantly larger recovery of statutory damages (a maximum of $1,000) for individual plaintiffs as compared to a class action (a maximum aggregate recovery of the lesser of $500,000 or one percent of the net worth of the debt collector). 15 U.S.C. § 1692(k)(a). While the parties do not address this aspect of the superiority analysis, a court in this district recently discussed it in detail. *See Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188, 2016 WL 1070666, at **7-10 (N.D. Cal. Mar. 18, 2016). In the context of a contested certification motion, the *Datta* court held that the "efficacy of a single class action lawsuit . . . outweighs the possibility of a small class recovery," a common feature of FDCPA class actions. *Id.* Putative class members are protected because they have the right to opt out of the class settlement if they wish to pursue their own potentially larger claims. *Id.* at *8. The Court finds *Datta* persuasive and adopts its reasoning, and finds that superiority is satisfied.

In sum, because the Court finds that predominance and superiority are present in this case, provisional certification of a damages class under Rule 23(b)(3) is appropriate.

### 3. Rule 23(b)(2) Certification (Cohesiveness of Injunctive Relief)

Plaintiffs also seek to permanently enjoin Defendant from using the problematic language at issue in their initial debt communications. For that reason, and as confirmed at oral argument, Plaintiffs request certification of an injunctive relief class under Rule 23(b)(2).

To certify a class under Rule 23(b)(2), a plaintiff must show that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *Dukes* 131 S. Ct. at 2557. Here, Plaintiff alleges a uniform pattern or practice of failing to disclose that debt verification requests must be submitted in writing. Because a single injunction is sufficient to restrain that conduct, the Court finds that the injunctive relief requested is sufficiently cohesive. *See Walters*, 145 F.3d at 1047.

Accordingly, provisional class certification under Rule 23(b)(2) is also appropriate.

### 4. Appointment of Class Representatives and Class Counsel

Because the Court finds that Plaintiff meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.

Additionally, when a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

>   (i)   the work counsel has done in identifying or investigating potential claims in the action;
>   (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>   (iii) counsel's knowledge of the applicable law; and
>   (iv)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). But, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In light of the fact that Plaintiffs' counsel has experience litigating FDCPA class actions, Dkt. No. 56-1 ¶ 4, and given its diligence in prosecuting this action to date, the Court appoints Greenwald Davidson Radbil PLLC as class counsel.

## III.   PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional certification is appropriate, the Court now considers whether the parties' class action settlement should be preliminarily approved on its substantive terms.

### A.   Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

10

Courts scrutinize whether the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). In passing judgment on a proposed settlement, courts lack the authority to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**B.     Analysis**

1.     The Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). The parties provide no information about the settlement process. The only evidence in the record about how the parties reached the proposed settlement comes from the parties' stipulated request to stay their mediation. Dkt. No. 48. Given the lack of additional updates about the issue, the Court assumes that the parties informally resolved the action without using a neutral, which does not in itself preclude a fairness finding. *See Schuchardt*, 2016 WL 232435, at *8 (noting that "[c]ourts have approved settlements reached through informal settlement negotiations").

The Ninth Circuit has noted that there are three red flags of tacit collusion in proposed class action settlements: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *In re Bluetooth Headset*, 654 F.3d at 947.

Two of the three *Bluetooth* red flags are present in this case. Class counsel has negotiated a "clear sailing" agreement with Defendant that awards an amount in attorneys' fees and costs that is disproportionate to the class recovery. Specifically, each absent class member will receive $10 for an aggregate recovery of about $11,670, while class counsel has negotiated for an unopposed $25,000 in fees and costs. This 2-to-1 disparity might warrant denial of preliminary approval in other circumstances. But the recovery for the absent class actually meets or exceeds the maximum possible recovery of statutory damages under the FDCPA and RFDCPA. That is because where actual damages are not at issue, the total recovery for absent class members is statutorily capped at the lesser of either one percent of the net worth of the debt collector or $500,000. 15 U.S.C. § 1629k(a)(2)(B).[1] The parties have represented that $11,670 is the maximum aggregate recovery under that rubric. Because the absent class could not recover more money at trial than under the settlement, the Court finds no evidence of tacit collusion under the first two *Bluetooth* factors.

The third red flag discussed in *Bluetooth*—reversion of unclaimed settlement funds to the defendant—does not exist in this case. The settlement provides that any settlement fund balance remaining after all claims are paid out will transfer to a *cy pres* recipient.

Accordingly, there is no evidence of collusion in the record, and the Court finds that this first factor weighs in favor of preliminary settlement approval.

### 2. Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies in the settlement agreement. For that reason, this factor also weighs in favor of preliminary settlement approval.

### 3. Preferential Treatment

Under the third factor, the Court examines whether the settlement agreement provides preferential treatment to any class member. This factor requires close consideration in this case.

By the terms of the proposed settlement agreement, each of the 1,157 putative class

---

[1] "Net worth" for the purposes of the FDCPA means balance sheet net worth, not fair market net worth including goodwill. *Schuchardt*, 2016 WL 232435, at *10 (quoting *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) (cited with approval by *Gonzales*, 660 F.3d at 1068)).

1  members will receive $10 in monetary recovery.  Dkt. No. 51-1 ¶ 10.A.  But the named Plaintiffs
2  themselves will receive an additional $1,000, which they characterize in their moving papers as
3  statutory damages awarded under 15 U.S.C. § 1692k(a)(2)(A).  *Id.* ¶ 10.E; Mot. at 14.  In the
4  settlement agreement, provision of that $1,000 award is juxtaposed with the claim that Plaintiffs
5  will not seek an incentive award for their service as class representatives.  Dkt. No. 51-1 ¶ 10.E.

6  The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs
7  that counsel has allowed the "self-interests" of "certain class members to infect negotiations."  *In
8  re Bluetooth.*, 654 F.3d at 947.  For that reason, courts in this district have consistently stated that
9  preliminary approval of a class action settlement is inappropriate where the proposed agreement
10 "improperly grants preferential treatment to class representatives."  *Tableware*, 484 F. Supp. 2d at
11 1079.  Applying that standard, the instant settlement agreement's disparately favorable treatment
12 of the named Plaintiffs appears on first glance to pose a problem.  The parties explain, however,
13 that the settlement distribution gives the named Plaintiffs a substantially greater recovery because
14 of the structure of the statutory damages regime under the FDCPA and RFDCPA.  Mot. at 13-14.
15 And to compensate for this disparity, Plaintiffs are not seeking incentive awards.  *Id.*  These
16 assertions warrant some discussion.

17 As noted above, 15 U.S.C. § 1692k sets forth the damages regime in FDCPA civil actions,
18 which the RFDCPA expressly incorporates in Cal. Civ. Code § 1788.17.  In individual actions, a
19 plaintiff may recover the sum of actual damages, statutory damages not exceeding $1,000 (as
20 calculated using certain enumerated factors), and attorneys' fees and costs.  15 U.S.C. § 1692k(a),
21 (b).  In a class action, actual damages and attorneys' fees and costs are also recoverable in the
22 same manner, but the measure of statutory damages diverges between named plaintiffs and absent
23 class members.  15 U.S.C. § 1692k(a)(2)(B) provides that a named plaintiff still recovers statutory
24 damages in the same way as an individual plaintiff, with a $1,000 cap, while absent class members
25 receive an amount determined "without regard to a minimum recovery, not to exceed the lesser of
26 $500,000 or 1 per centum of the net worth of the debt collector[.]"  The statute therefore plainly
27 contemplates disparate treatment of named plaintiffs and absent class members, at least when an
28 action is resolved on the merits in favor of the class.

Given this unique regime of statutory damages under the FDCPA and RFDCPA, the Court finds that the disparately favorable treatment of the named plaintiffs does not preclude preliminary approval. That is not to say the Court could not imagine a situation in which a named plaintiff in an FDCPA case accepts a substantially disparate payout to the detriment of the putative class. But those concerns are mitigated where the amount of statutory damages recovered for the putative class matches (or even exceeds) the maximum trial recovery under 15 U.S.C. § 1692k(a)(2)(B). If the law precludes a better outcome for the putative class at trial, the settlement is not *improperly* disparate. And the named Plaintiffs' decision to not seek an incentive award further allays the concern regarding potentially improper preferential treatment. At least one court in this district has reached the same conclusion. *See Schuchardt*, 2016 WL 232435, at \*10.

For these reasons, the Court finds that this third factor weighs in favor of preliminary approval.

### 4. Settlement Within Range of Possible Approval

The fourth and final factor that the Court considers is whether the settlement is within the range of possible approval. "To determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchardt*, 2016 WL 232435, at \*10 (quoting *Tableware*, 484 F. Supp. 2d at 1080). In this case, each absent class member will receive $10, at or above the maximum statutory damages available for the FDCPA violation. An identical outcome was preliminarily approved by another court in this district. *See id.* The Court finds that the settlement is within the range of possible approval.

### 5. *Cy Pres* Distribution

A *cy pres* award must qualify as "the next best distribution" to giving the funds directly to class members. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). As a result, "[n]ot just any worthy recipient can qualify as an appropriate cy pres beneficiary." *Id.* The Ninth Circuit "require[s] that there be a driving nexus between the plaintiff class and the cy pres beneficiaries." *Id.* (citation omitted). A cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote

from the plaintiff class[.]" *Id.* (internal quotation marks and citations omitted). Here, the selected *cy pres* recipient is Bay Area Legal Aid. SA ¶ 10.D. This organization provides legal services to low-income Bay Area residents, including consumer law and debtor's rights assistance.[2] For that reason, the Court finds that there is a sufficient nexus between the *cy pres* recipient and the class.

In sum, because all relevant factors weigh in favor of approving the settlement agreement and the *cy pres* recipient is appropriate, the Court grants preliminary approval of the settlement.

## IV.  PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator will send class notice via US mail to each absent class member at their last known address, as provided by Defendant and updated by the administrator as appropriate. SA ¶ 6.C. Any letters returned as undeliverable will be sent to any updated address provided with the returned mail. *Id.* Under the circumstances, the Court finds that this is the best practicable form of notice.

With respect to the content of the notice itself, "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members[.]" Fed. R. Civ. P. 23(c)(2)(B). The parties have attached a copy of their proposed class notice to the settlement agreement. *Id.*, Ex. C. The proposed class notice form provides the information required by Rule 23(c)(2)(B). SA ¶ 8.A.

Finally, the parties propose using First Class, Inc. to administer the settlement. SA ¶ 6.B. First Class would implement the notice program, as well as process any requests for exclusion, objections, comments, and other correspondence from the absent class. *Id.* ¶¶ 6.B, 8.A  The

---

[2] Bay Area Legal Aid, "What We Do," https://www.baylegal.org/what-we-do/ (last visited May 3, 2016).

Court finds that First Class is qualified to perform the tasks associated with administering the notice outlined in the settlement agreement and therefore approves First Class as the administrator.

## V. AWARD OF ATTORNEYS' FEES AND COSTS

The settlement agreement provides that Plaintiffs' will file a motion for attorneys' fees and costs in an amount not to exceed $45,000 and that Defendant will not oppose any request for an amount equal to or less than $25,000. SA ¶ G.1

## VI. SETTLEMENT APPROVAL SCHEDULE

The Court adopts most of the schedule set forth by the parties in their proposed order and sets some additional deadlines as required. *See* Dkt. No. 56-1 at 28-29.

| Event | Date |
|---|---|
| Deadline to File CAFA Notice | 10 days after Order |
| Deadline for Settlement Administrator to Send Class Notice | 30 days after Order |
| Deadline to File Motion for Final Approval | 50 days after Order |
| Deadline to File Attorneys' Fees and Costs Motion (with a standard briefing schedule, if necessary) | 50 days after Order |
| Deadline for Class Members to File Objection / Opt Out | 60 days after Order |
| Deadline for Class Members to File Notice of Intent to Appear at Final Fairness Hearing | 60 days after Order |
| Deadline for the Parties to File Responses to Any Objections | 60 days after Order |
| Deadline for Claims Administrator to File List of Timely Requests for Exclusion | 75 days after Order |
| Final Fairness Hearing | August 4, 2016 |

## VII. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 5/4/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge