UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE HARPER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE LAW OFFICE OF HARRIS AND ZIDE LLP,<br><br>Defendant. | Case No. 15-cv-01114-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 70, 71 |

## I. INTRODUCTION

Pending before the Court is Plaintiff Joyce Harper and Leila Emerson's ("Plaintiffs") unopposed motion for final approval of class action settlement. Dkt. No. 70 ("Mot."). Also pending is Plaintiffs' motion for attorneys' fees and costs. Dkt. No. 71 ("Fees Mot."). The Court held a final fairness hearing on August 4, 2016. Dkt. No. 78. For the reasons stated below, the Court **GRANTS** final approval, as well as Plaintiffs' motion for attorneys' fees and costs.

## II. BACKGROUND

### A. Litigation History

Plaintiffs filed suit against Defendants The Law Office of Harris and Zide ("Defendant") and Bank of America, National Association ("BOA"), the latter of which has been dismissed from the action, for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("RFDCPA"). *See* Dkt. No. 29 ("Compl.") ¶ 1.

Plaintiffs allege that Defendant, while acting to collect debts from the putative class on behalf of BOA, failed to provide the exact disclosure required by 15 U.S.C. § 1692g(a)(4). *Id.* ¶¶ 1-2. Specifically, § 1692g(a)(4) requires that debt collectors send certain "validation notices" to debtors when attempting to collect a debt, which advise debtors about their rights to dispute the

1

debt and to request, "in writing," that the debt collector provide verification of the debt. *See* 15 U.S.C. § 1692g(a)(4). Unless this information is included in the initial communication with a debtor, a debt collector must provide notice within five days. *Id.* § 1692g(a). Plaintiffs allege that Defendant failed to inform them that verification of their purported debt had to be requested in writing, thereby implying that an oral request for verification of the debt is valid. Compl. ¶¶ 22-34. On that basis, Plaintiffs sought statutory damages, injunctive and declaratory relief, pre-judgment and post-judgment interest, and attorneys' fees and costs. *Id.* ¶ 70.

Defendant answered the complaint on June 17, 2015. Dkt. No. 36. Plaintiffs stipulated to dismiss BOA from the action and filed a notice of settlement on September 17, 2015. *See* Dkt. Nos. 51, 52. Plaintiffs filed their unopposed motion for preliminary approval of class action settlement on November 2, 2015. Dkt. No. 56. The Court granted the motion on May 4, 2016, appointing Plaintiffs as class representatives, Greenwald Davidson Radbil PLLC as class counsel, and provisionally certifying a Rule 23(b)(3) damages class for statutory damages and a Rule 23(b)(2) injunctive relief class for changed debt collection practices. *See* Dkt. No. 67. The Court also approved Bay Area Legal Aid as a *cy pres* recipient. *Id.* at 15. Plaintiffs represented that they would file a motion for attorneys' fees and costs not to exceed $45,000, and Defendant agreed not to oppose any request for $25,000 or less. Dkt. No. 56-1 ("SA").

On June 23, 2016, Plaintiffs moved for final approval of the class action settlement and for attorneys' fees and costs in the amount of $45,000. *See* Dkt. Nos. 70, 71. Defendant opposed Plaintiffs' motion for attorneys' fees and costs, Dkt. No. 73, and Plaintiffs replied, Dkt. No. 76.

**B.     Overview of the Proposed Settlement**

On November 2, 2015, the parties submitted a class action settlement agreement that details the provisions of the proposed settlement. *See* SA. The key terms are as follows:

<u>Class Definition</u>: All persons with a California address to whom Defendant mailed an initial debt collection communication that stated, "If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you," between March 10, 2014 and March 10, 2015, in connection with the collection

of a consumer debt on behalf of Bank of America, N.A. *Id.* ¶ 1.B. The parties have represented that there are a total of 1,111 persons who fall within this class definition, despite initially estimating that there would be 1,156 people in the class. Dkt. No. 77-1 ¶ 6; *see also* SA ¶ 10.A.

Monetary Relief: Each class member will receive $10 regardless of the ultimate size of the class. SA ¶ 10.A. Given the currently estimated class size, the class will receive an aggregate payment of $11,110. *See id.* (stating that '[s]hould the Parties discover that there are additional, or fewer, Class Members, the Settlement Fund will be adjusted accordingly such that the Settlement Fund consists of $10.00 per Class Member."). Plaintiffs, as named plaintiffs, will receive an additional $1000 each as statutory damages awarded under 15 U.S.C. § 1692k(a)(2)(A). *Id.* ¶ 10.E; Dkt. No. 56. at 14. To the extent that any funds remain after all claims are paid, Bay Area Legal Aid will receive the balance as a *cy pres* recipient. *Id.* ¶ 10.D.

Injunctive Relief: Defendant will no longer use the language quoted in the class definition in its initial debt collection communications. *Id.* ¶ 10.F.

Release: The class will release Defendant and any associated persons or entities from any and all known and unknown claims that arise out of or relate to the use of the language quoted in the class definition from Defendant's initial debt collection communications. *Id.* ¶ 1.C.

Attorneys' Fees and Costs: The settlement agreement authorizes class counsel to seek attorneys' fees and costs not to exceed $45,000. *Id.* ¶ 10.G.1. However, Defendant only agreed not to oppose an application for fees and costs totaling no more than $25,000. *Id.* Settlement is not contingent on the outcome of this fee application, which remains subject to the discretion of the Court. *Id.* ¶ 10.G.2.

**III.    DISCUSSION**

    **A.    Motion for Final Approval of Class Action Settlement**

        **i.    Class Certification**

Final approval of a class action settlement requires, as a threshold, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019, 1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on

May 4, 2016, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 67. The Court affirms its previous findings and certifies the settlement class.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). To assess whether a proposed settlement comports with Rule 23(e), courts should consider the following factors:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1025 (hereinafter, the "*Hanlon* factors"). No single factor is the "most significant," *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), and "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge," *Hanlon,* 150 F.3d at 1026. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

#### a. Adequacy of Class Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected

4

class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan previously approved by the Court, Dkt. No. 67 at 3, 15-16, was implemented and complies with Rule 23(c)(2)(B). The Court ordered that third-party settlement administrator, First Class, Inc. ("First Class"), send class notice via US Mail to each putative class member at their last known address, as provided by Defendant and updated as appropriate. *Id.* Any returned mail was to be sent to any updated address provided with the returned mail. *Id.* Prior to sending class notice, First Class revised the class size downwards from 1,156 to 1,111 because 45 putative class members had exact duplicate records. Dkt. No. 77-1 ¶ 6. The settlement administrator states that class notice was provided as directed. *Id.* ¶¶ 5, 7-9. Sixty notices were returned as undeliverable with no forwarding address or further information provided by the U.S. Postal Service. *Id.* ¶ 9. The parties received no objections to the settlement, and only one request for exclusion. *Id.* ¶¶ 10, 11. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

      b. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

      1. Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Continued Litigation; and Risks of Maintaining Class Action Status

Approval of a class action settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotations omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. In its answer, however, Defendant denied Plaintiffs' allegations and argued that the case is not appropriate for class certification. *See* Dkt. No. 36 ¶¶ 1, 2, 70. It is thus not clear that Plaintiffs would have successfully overcome Defendant's opposition to class certification, as well as any motions to dismiss and/or motions for summary judgment. In light of Defendant's apparent willingness to defend against this action, there would be no guarantee of a favorable result even if the parties were to proceed through protracted litigation. Moreover, the recovery sought under the FDCPA's damages provision is not mandatory, and instead provides for an award up to a certain amount based on the balancing of several factors. *See* 15 U.S.C. § 1692k(a) & (b). Thus, even if Plaintiffs were successful at trial, there remains the risk that the Court could reduce Plaintiffs' ultimate recovery. In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class. *See Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 966 (9th Cir. 2009) (recognizing that difficulties and risks in litigating weigh in favor of approving a class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (internal quotations omitted)).

2. Amount Offered in Settlement

The amount offered in the settlement is another factor that weighs in favor of approval. The class will receive $11,110 in the aggregate, which exceeds the maximum statutory damages available under the FDCPA of 1% of Defendant's total net worth. *See* 15 U.S.C. § 1629k(a)(2)(B); *see also Schuchardt v. Law Office of Rory W. Clark*, No. 15-cv-01329, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (holding that "net worth" for the purposes of the FDCPA means balance sheet net worth, not fair market net worth including goodwill) (citing *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000)). Each class member will receive $10. *See* SA ¶ 10.A. This is in line with another recent FDCPA class action settlement. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 684 (N.D. Cal. 2016) (finally approving class action settlement awarding $15.10 per class member "where Plaintiffs' potential recovery [was] limited by Defendant's more modest net worth."). The named Plaintiffs here will

1   also receive an additional $1,000 in statutory damages in lieu of an incentive award.  SA ¶ 10.E;
2   Dkt. No. 56. at 14.  While the Court initially found this additional award concerning, the FDCPA's
3   compensation structure expressly allows this outcome.  *See* Dkt. No. 67 at 13; *see also* 15 U.S.C.
4   § 1692k(a).  The class will also receive injunctive relief as Defendant has agreed to stop using the
5   offending debt collection letters.  *See* SA ¶ 10.F.  Based on the facts in the record and the parties'
6   arguments at the final fairness hearing, the Court finds that the settlement amount weighs in favor
7   of final approval.

### 3.  Extent of Discovery Completed and Stage of Proceedings

This factor evaluates whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Here, Plaintiffs "prepared and served written discovery on Defendant on June 18, 2015," which included 18 interrogatories and 21 requests for production.  Dkt. No. 71-1 ¶ 17.  Plaintiffs' written discovery focused on Defendant's net worth, class damages, the number of potential putative class members, Defendant's policies and procedures regarding FDCPA compliance, the preparation and dissemination of the allegedly offending letters, and exploration of Defendant's alleged affirmative defenses.  Dkt. Nos. 70 at 10, 71-1 ¶ 17.  The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits.  This factor weighs in favor of approval.

### 4.  Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval.  "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (internal quotation marks omitted).  Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the Class' interests in this action.  *See* Dkt. No. 67 at 7.  Class counsel "firmly believe[s]

that the settlement is fair, reasonable, and adequate, and in the best interests of the class." Dkt. No. 70 at 10.  The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions.  *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved.").  Accordingly, although the Court finds that this factor weighs in favor of approval, the Court affords only modest weight to counsel's views.

### 5. Governmental Participation

This factor is irrelevant to the Court's analysis because no governmental entity participated in this matter.

### 6. Reaction of Class Members

The reaction of the class members supports final approval.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements regarding objections and exclusions.  *See* Dkt. No. 77-1.  The deadline to file opt-outs and objections was approximately July 3, 2016.  *See* Dkt. No. 67.  No objections were received, but one class member opted out.  Dkt. No. 77-1 ¶¶ 10, 11.  The Court finds that the absence of objections and near absence of opt-outs indicates overwhelming support among the class members, constitutes a positive reaction, and weighs in favor of approval.  *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

* * *

After considering and weighing all of the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is **GRANTED**.

### B.     Motion for Attorneys' Fees and Costs

Class counsel asks the Court to approve an award of $42,442.99 in attorneys' fees and $2,557.01 in costs for a total of $45,000. Dkt. No. 79 at 3. In the settlement agreement, Plaintiffs agreed to request an award of attorneys' fees and costs not exceeding $45,000 and Defendant agreed to pay attorneys' fees and costs not exceeding $25,000. *See* SA ¶ 10.G.1. In its opposition to Plaintiffs' motion for attorneys' fees and costs, Defendant requests that the Court reduce any potential award to a maximum of $30,000. Dkt. No. 73. Separate and apart from the settlement fund, Defendant has agreed to pay named Plaintiffs statutory damages of $1000 each under 15 U.S.C. § 1692k(a)(2)(A). *Id.* ¶ 10.E; Dkt. No. 56. at 14. Named Plaintiffs thus do not seek an incentive award. SA ¶ 10.E.

#### i.     Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted). As a fee-shifting statute, "the FDCPA's statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks omitted). In FDCPA cases, "[d]istrict courts must calculate awards for attorneys' fees using the lodestar method . . . and the amount of that fee must be determined on the facts of each case." *Id.* at 978 (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)) (internal quotation marks omitted); *St. Bernard v. State Collection Srvc., Inc.*, 782 F. Supp. 2d 823, 826 (D. Ariz. 2010) (district courts must calculate damages using the

lodestar method in FDCPA cases because "for Congress's private attorney general approach to succeed in the context of FDCPA cases, attorney fees must not hinge on a percentage of actual damages awarded."). The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho*, 523 F.3d 973 at 978 (internal quotation marks omitted).

Here, Plaintiffs contend that class counsel had expended a combined 138.6 hours on this case as of June 23, 2016. Fees Mot. at 8. Class counsel submitted a supplemental declaration regarding attorneys' fees and costs on August 5, 2016, stating that they had expended an additional 28.90 hours of work, for a grand total of 167.5 hours.[1] Three attorneys request a billing rate of $400 per hour and one requests a billing rate of $350 per hour. *Id.* Applying these rates to these hours, Plaintiffs calculate their lodestar to be $62,880. *Id.* at 10. However, because class counsel apparently added an additional .1 hour to the total, the Court calculates the lodestar to be $62,840 after reducing the total amount by .1 hour at a rate of $400/hour ($40). Nevertheless, class counsel seeks an award of $45,000, which is inclusive of expenses and costs incurred. Notably, class counsel does not "assert that a lodestar multiplier should be applied to increase their fees. Instead, they assert that the fees sought are reasonable because they represent a discount compared to the [ ] lodestar in this matter—in other words, a negative multiplier." *Schuchardt*, 314 F.R.D. at 690; *see also* Dkt. No. 79 at 3.

Defendant contends that because the parties settled the lawsuit within six months of its filing and did not file any contested motions, Plaintiffs' request for attorneys' fees and costs in the amount of $45,000 is unreasonable. *See* Dkt. No. 73. Instead, Defendant requests that the Court

---

[1] While class counsel's supplemental declaration states that counsel completed 167.6 hours total, the Court calculates the total amount to be 167.5 hours (138.6 hours listed in Dkt. No. 71, Ex. 1 + 28.9 hours listed in Dkt. No. 79, Ex. 1).

10

1  reduce any potential award to a maximum of $30,000.  *Id.* at 1.

          a.  Billing Rates

Defendant first argues that the requested billing rates are not supported by sufficient evidence.  *Id.* at 4.  Under *Camacho*, "the established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  523 F.3d at 979 (quotation marks omitted).  Generally, "the relevant community is the forum in which the district court sits."  *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases."  *Schuchardt*, 314 F.R.D. at 687.

Because Plaintiffs did not submit any information about the skill and experience of three of the four attorneys who worked on this case, Defendant argues that there is no way for the Court to evaluate their requested rates.  Dkt. No. 73 at 5.  Plaintiffs reply that a Court in this district has previously approved these rates for these same attorneys in a different case.  *Id.* at 3; *see also Schuchardt*, 314 F.R.D. at 689.

While it is true that Plaintiffs did not submit a declaration evidencing the experience of the three attorneys whose rates are now contested, the Court finds the identical rate determination for the identical attorneys in *Schuchardt* to be sufficient evidence that Messrs. Greenwald, Davidson, and Johnson's requested rates are reasonable.  *See Schuchardt*, 314 F.R.D. at 689 ("Class Counsel's declaration does not provide the education and practice areas of Messrs. Greenwald, Davidson, and Johnson . . . Class Counsel did not submit affidavits from other area attorneys attesting to local rates, but they did cite cases in which courts in this District found similar rates appropriate in FDCPA cases . . . Given that Class Counsel has been appointed in numerous class actions, including FDCPA cases; courts have awarded them exactly the same rates requested here

1   in previous cases; and courts in this District found similar rates appropriate in FDCPA cases, Class
2   Counsel's requested rates are reasonable."). This conclusion is also consistent with this Court's
3   recent approval of higher rates for other consumer class action plaintiff's attorneys. *See*
4   *Altamirano v. Shaw Indus., Inc.*, No. 13-939, 2016 WL 1271046, at *6 (N.D. Cal. Mar. 31, 2016)
5   (approving blended rate of $570). The Court therefore approves Plaintiffs' counsel's requested
6   billing rates.

### b. Litigation Against Bank of America

Defendant also argues that it should not bear any expenses incurred from Plaintiffs litigating against BOA, which was earlier dismissed from the action. Dkt. No. 73 at 5. Defendant contends that BOA could never have been liable under the FDCPA as a creditor, and that the claim was therefore frivolous. *Id.* at 6.

The Ninth Circuit has outlined a two-part test for determining whether a fee should be reduced on the basis of abandoned claims. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901-02 (9th Cir. 1995); *accord Schueneman v. 1st Credit of Am., LLC*, No. C 05 4505, 2007 WL 1969708, at *6 (N.D. Cal. Jul. 6, 2007); *see also Hensley*, 461 U.S. at 434-35 ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). First, the Court determines whether Plaintiffs' successful claims were related to Plaintiffs' unsuccessful claims. If the claims are unrelated, the Court may not include the time spent on the unsuccessful claims in the final award. *Schwarz*, 73 F.3d at 901. If the claims are related, the Court determines the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 901-02 (internal citation omitted). Full compensation is proper when a plaintiff's counsel has secured excellent results, and is excessive when only partial or limited success was achieved. *Id.* at 902. "Such decisions are within the district court's discretion." *Id.*

Here, the Court finds that abandonment of the BOA claim does not decrease the fees award. As an initial matter, when a Plaintiff dismisses a claim, it is considered "unsuccessful" under *Schwarz*. *Id.* ("[A] plaintiff's failure to prevail on a particular claim is no less a failure because it results from a dismissal on the law, rather than on the facts, *or when it is the plaintiff,*

*rather than the court, who dismisses the claim*."). That said, under step one, the successful claim against Defendant and the unsuccessful claim against BOA are closely related, as they are identical. *See* Dkt. No. 29. Under step two, Plaintiffs' counsel secured an excellent result on behalf of the class, exceeding the amount that it could have won at trial in statutory damages and injunctive relief. The Court therefore does not discount the hours spent on the BOA claim.

      c. Clerical Tasks

  Defendant requests that the Court write off the time billed on clerical tasks such as saving files, calendaring dates, registering for ECF, scheduling CourtCall appearances, and researching agents for service of process. Dkt. No. 73 at 6. In support of this proposition, Defendant cites to a Ninth Circuit opinion stating that "clerical tasks" such as research regarding filing procedures, attorney admissions, and document organization are not billable and should be built into the overhead of running a law firm. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors.").

  While it is true that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them [since] [the] dollar value [of such non-legal work] is not enhanced just because a lawyer does it," *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (citation omitted), here Defendant incorrectly labels many tasks as "clerical" that cannot reasonably be considered so. Specifically, the following tasks are attorney work: (1) reviewing client documentation; (2) legal calendaring; (3) reviewing standing orders; (4) drafting letters to the Court; (5) reviewing documents to be filed with the Court, including proofs of service; (5) preparing a joint motion to appear by telephone; (6) discussing case strategy; (7) filing the complaint; (8) researching the agent for service of process; (9) reviewing local rules; and (10) finding a claims administrator. *See* Dkt. No. 75-1, Ex. A (list of purportedly problematic time entries); *Palomares v. Astrue*, No. C-11-4515, 2012 WL 6599552, at *9 (N.D. Cal. Dec. 18, 2012). As Judge Chen concluded:

> "[T]he activities in question are not actually clerical. In *Nadarajah*, the activities considered clerical were filing, obtaining transcripts and document organization. *Id.* Here, the Commissioner contests

13

> counsel's entries stating: 'Download & Calendar chen sched order, ss standing order, chen standing order, review ECF rules" (0.4 hours), and 'Draft civil cover, cover to clerk, mail' (0.3 hours) . . . These entries include legal work and clerical work mixed together. For the entry that states draft civil cover, cover to clerk and mail it, counsel likely spent the majority of this time drafting and could have easily made this entry just say "draft civil cover." Similarly, downloading and reviewing the ECF orders could have easily been depicted as "review ECF orders," as downloading the orders would constitute a de minimis amount of time. Counsel should not be punished for being meticulous and honest."

*Palomares*, 2012 WL 6599552, at *9. The Court will, however, deduct .1 hours at $400/hour ($40) from the lodestar calculation for registering for N.D. Cal. ECF, which should be built into firm overhead costs.

          d.    Redundant, Excessive, and Unnecessary Tasks

Defendant also contends that Plaintiffs' counsel have engaged in unnecessary billing. Dkt. No. 73 at 7. Specifically, Defendant objects to: (1) the 2.3 hours spent drafting a complaint that was "virtually identical to those filed in at least seven other cases"; (2) drafting preliminary and final approval briefings that are similar to filings in other cases; (3) strategy meetings after the case settled; (4) researching local rules; (5) fixing filing errors; and (6) serving written discovery that led to documents offered voluntarily. *Id.* at 7-8.

Upon careful review of the specific billing entries, the Court does not find any of the alleged issues problematic aside from .3 hours at $400/hour ($120) spent correcting a filing error. *See* Dkt. No. 75-1 at 4; *see also St. Bernard*, 782 F. Supp. 2d at 828 (deducting .4 hours for "error of counsel's own making"). For example, while certain filings that are similar to filings in other cases may appear redundant, the relatively modest number of hours billed on drafting those filings is reasonable in light of class counsel's need to tailor the filings to this particular case, and the contested nature of certain motions. *See id.* at 2 (approximately 2.3 hours billed for drafting of class action complaint; approximately 19.4 hours billed for drafting of motion for final approval of class action settlement and contested motion for attorneys' fees and costs); *Cf. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 950 (9th Cir. 2007) ("The district court found that much of the language in [the plaintiff's] motion for fees was recycled from submissions to other courts. [Plaintiff] has offered no evidence to undermine the court's reasonable conclusion that billing for a

1  total of 13 hours was excessive."). The Court therefore counts each of these hours in its lodestar
2  calculation, minus the .3 hours mentioned above.

### e. Block Billing

Defendant next argues that the time that Plaintiffs' counsel recorded using "block-billing" is inappropriate. *See* Dkt. No. 73 at 8. The Ninth Circuit has sanctioned parties' use of block-billing by reducing the total hours awarded. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. It was reasonable for the district court to conclude that [the plaintiff] failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities."). But, as courts in this district have noted, where block-billing records "contain enough specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable," courts need not discount that time. *Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253, 2012 WL 3778852, at *4 (N.D. Cal. Aug. 30, 2012) (FDCPA case). Plaintiffs' counsel's entries here are sufficiently specific for the Court to ascertain their reasonableness, particularly in light of Civil Local Rule 54-5(b)(2)'s requirement for "[a] statement of the services rendered by each person for whose services fees are claimed," rather than a line-by-line itemization of each specific task. The Court therefore finds that it need not discount the allegedly block-billed time.

### f. Travel, Meal, and Pro Hac Vice Expenses

Finally, Defendant argues that Plaintiffs cannot recoup costs that include travel, meal, and pro hac vice expenses under 28 U.S.C. § 1920 and Civil Local Rule 54-3(a) as taxable costs. *See* Dkt. No. 73 at 8. Plaintiffs respond that they are not requesting these items as taxable costs, but as nontaxable costs under Federal Rule of Civil Procedure 23(h). *See* Dkt. Nos. 71 at 11, 76 at 13; Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"). Courts in this district routinely award travel costs in FDCPA class actions. *See, e.g.*, *Johnson v. CFS II, Inc.*, No. 5:12-CV-01091, 2013 WL 6841964, at *10 (N.D. Cal. Dec. 27, 2013) (awarding travel costs

in FDCPA action); *De Amaral v. Goldsmith & Hull*, No. 12-CV-03580, 2014 WL 1309954, at *7 (N.D. Cal. Apr. 1, 2014) (same); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1838562, at *1 (N.D. Cal. May 13, 2011) (awarding travel costs in connection with final approval). Courts considering class action lawsuits in other districts have done the same. *See, e.g.*, *In re Toys R Us-Del., Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014) (stating that under Rule 23(h) "[e]xpenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.") (internal quotation marks omitted).

Having reviewed counsel's itemized list of the expenses incurred throughout this case, the Court finds that the costs were reasonable and properly expended. *See Gaudin v. Saxon Mortgage Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *9 (N.D. Cal. Nov. 23, 2015) ("To support an expense award, Plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable."). Accordingly, the Court does not deduct any requested costs.

## IV.    CONCLUSION

Based on its analysis of the factors discussed above, the Court finds that the proposed settlement is fair, just, reasonable, and adequate and **GRANTS** Plaintiffs' unopposed motion for final approval of the class action settlement, as well as final certification of the class.

The Court also **GRANTS** Plaintiffs' motion for attorneys' fees and costs. While the Court found that Plaintiffs' counsel overbilled by $140 as discussed herein, counsel's requested attorneys' fees and costs are significantly below their lodestar. Accordingly, the Court will award the full $45,000 in attorneys' fees and costs and a $1000 statutory award to each named Plaintiff.[2]

//

//

//

---

[2] Because this order's analysis does not rely on the documents listed in Defendant's request for judicial notice, the request is denied as moot.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement.  The Court directs the Clerk of the Court to enter Final Judgment consistent with this order, and to close the case. The Court retains jurisdiction over the parties to enforce the terms of the judgment.

**IT IS SO ORDERED.**

Dated:  3/15/2017

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge